Moncure, J.
A court from which process is issued may permit the sheriff’s return thereon to be amended at any time, even though a suit or motion founded on the original return be then pending, and even though the proposed amendment be inconsistent with the original return, and take away the foundation of the suit or motion. Wardsworth v. Miller, 4 Gratt. 99; Smith v. Triplett, 4 Leigh 590. See also Bullitt v. Winston, 1 Munf. 269; and Rucker v. Harrison, 6 Id. 181. The sheriff may make the amendment as he may do all, or nearly all, the other acts of his office, by his deputy; and such deputy need not'be the same who made the original return. The propriety of permitting such amendment to be made can only be questioned by resisting the motion for that purpose, or by an appeal *534 from, or writ of error to, the judgment; and not in any collateral proceeding. The amended return takes ■ the place of the original return ; and any suit or motion which may be pending, founded on the original return, can proceed further, only on the amended return ; but the pleadings may be amended, if necessary, to suit the amended return.
The statute on which the motion in this case is founded, gives a new and summary remedy, highly penal in its nature, and should be strictly construed; especially as it is cumulative, and does not take away the common law action on the case for any official default of the sheriff, nor the old statutory action of debt for an escape.
Regarding this motion as upon the amended return, in which view only it can be regarded, it can be sustained, if at all, only on one of these two branches of the statute, viz: On that which makes the sheriff responsible if he shall return on any writ of ca. sa. that he hath taken the body of the defendant, and hath the same ready to satisfy the money in such writ mentioned, and shall have suffered him to escape with the consent of such sheriff; or, on that which makes him responsible if he shall make any return upon any execution as would entitle the plaintiff to recover from him by action of debt, the debt, damages or costs in such execution mentioned.
It cannot be sustained on the former branch of the statute; because the amended return, though it shows that the sheriff hath taken the body of one of the defendants, does not show that he hath the same ready to satisfy the money, &c.; but on the contrary, shows that he hath not the same ready to satisfy, &c.; the said defendant having made his escape. Even if it showed that the escape was with the consent of the sheriff the case would not fall under this, but under the latter branch, which was added to the statute at *535 the revisal of 1819 for the purpose of covering such a case.
Nor can it be sustained on the latter branch of the ■ statute; because the amended return does not entitle the plaintiff to recover from the sheriff by action of debt, the debt, damages or costs in such execution mentioned. It does not show that the sheriff willfully and negligently suffered the defendant to escape, in which case only can the action of debt for an escape-be sustained. To sustain the motion under this branch of the statute, everything necessary to sustain an action of debt must appear on the face of the return, which cannot be enlarged, abridged or altered by evidence aliunde. If there be any ambiguity in this case, it is patent and cannot be removed by parol evidence. To make the amended return sufficient to sustain an action of debt, the important words “with the consent of the sheriff,” or words of like import, must be supplied by parol and follow the word “ escaped” at the end of the return. It is no sufficient answer to say that in an action for an escape, if the plaintiff prove the escape a jury may presume that it was with the assent or through the negligence of the sheriff, unless it be shown by the defendant to have been tortious. That would be a presumption of fact upon the whole case; not only from the affirmative fact of escape, but from the negative fact of the absence of evidence to account for it. No such presumption of fact can be made by the court in a motion under this branch of the statute. There can be no recovery even of nominal damages in any action for an escape, unless the jury who try the issue expressly find that the prisoner escaped with the consent or through the negligence of the sheriff, or that such prisoner might have been retaken and that the sheriff neglected to make immediate pursuit.
This requisite of our statute cannot be supplied *536 by any intendment or reference whatsoever; therefore, where the declaration charged the sheriff with a voluntary escape, who pleaded not guilty, a general verdict for the plaintiff was held not to warrant a judgment against the'defendant. Hooe v. Tebbs, 1 Munf. 501. If the finding of the j ury in an action for an escape were merely that the defendant “ made his escape,” certainly no judgment could be entered for the plaintiff on the verdict. The addition of the words “there being no jail provided by the County court at the time to confine him in,” would rather weaken than strengthen the case of the plaintiff. So far from showing what the statute requires to be shown, such a finding would tend to show the contrary. The same observations apply to this case, in which the facts necessary to the sheriff’s conviction, must appear on the face of the return, as in that they must appear in the verdict of the jury; and the same words should receive the same construction in both cases.
For the foregoing reasons, I am for affirming the judgment.
Daniel, J.
The act of assembly under which the proceedings in this case were had, provides (among other things) that if any sheriff, under sheriff' or other officer shall make return upon any writ of cajñas ad satisfaciendum, that he hath taken the body or bodies of the defendant or defendants, and hath the same ready to satisfy the money in such writ mentioned, and shall have actually received such money of the defendant or defendants, or have suffered him or them to escape with the consent of such officer, and shall not immediately pay such money to the party to whom the same is payable ; or shall make any other return upon any such execution as would entitle the plaintiff to recover from such officer by action of debt, the debt in such execution mentioned, and such officer shall not *537 immediately pay the s.ame to the party to whom it is payable, then or in either of said cases it shall be lawful for the creditor at whose suit such writ shall issue, upon motion, on ten days’ notice, to recover of such officer the money in such writ mentioned, with interest thereon at the rate of fifteen per centum per annum, from the return day of the execution until the judgment shall be discharged. 1 Rev. Code of 1819, p. 542.
The writ of capias ad satisfaciendum sued out, was against three defendants, Neal, Royall and Sutherlin : And the original return upon it was “ Executed 25th day of January 1843. William B. Townes, D. S. for Nathaniel Wilson, sheriff.”
The notice was founded on this return; but after the motion was docketed the defendant asked leave to amend his return, which being granted, an amended return was made in the following words: “ The ca. sa. was not executed on John Eoyall, he being no inhabitant of Pittsylvania county, and residing in the state of Georgia from the issuing of said ca. sa. till the return day thereof; and it was not executed on the defendant Neal, he having availed himself of the benefit of the bankrupt law of the United States previous to the issuing of said ca. sa. and the sheriff being informed by the plaintiff that he did not wish the ca. sa. executed on said Neal; and it was executed on the defendant Sutherlin only; and there being no jail provided by the County court, at the time, to confine him in, he made his escape. Nathaniel Wilson, late sheriff, by Thomas S. Jones, his late deputy.”
Upon the trial of the motion the plaintiff introduced the writ of capias ad satisfaciendum, and the original and amended returns thereon, and proved that Townes the deputy, who made the original return, levied the writ on Sutherlin, who, having a sick family, proposed to Townes when in his custody, under the writ, to *538 meet him at the court-house of Pittsylvania county on a certain day, and yield himself to the custody of the said writ; which Townes, after consultation with counsel, assented to, and thereupon permitted Sutherlin to go at large. That after he was thus permitted to escape, Sutherlin caused a notice to be served upon the plaintiff, that he would, on the-day of-in order to be discharged from the ca. sa. avail himself of the benefit of the act for the relief of insolvent debtors; that on the day appointed in the notice, Sutherlin appeared at the court-house; that the plaintiff also attended, and also Thomas S. Jones, another deputy of the defendant; and that all three met together in the clerk’s office: Townes not attending. That the plaintiff thereupon instituted an enquiry in the office concerning his execution aforesaid: That the clerk, by mistake, had entered the execution on his process book as an execution of fieri facias, and the plaintiff, misled thereby, instructed Jones to levy it on some horses, which it was understood Sutherlin then had at the court-house; and thereupon the parties separated; Sutherlin not taking the oath of an insolvent debtor, not being detained or claimed to be detained by or under the ca. sa. aforesaid by the said Jones the deputy sheriff, or any one else; the said Sutherlin departing to his own house.
As a preliminary to the 'task of construing the statute and applying it to the case made by the plaintiff, a brief enquiry into the state of the law of escape as existing at the time when the act was passed, seems necessary. By the common law there were but two kinds of escape of a debtor in execution, voluntary, or negligent. Voluntary escapes are such as are by the express consent of the sheriff or jailor; negligent, where the prisoner escapes without the consent or knowledge of the sheriff or jailor. Sheriffs and jailors were obliged to keep persons in execution “in close and safe custody;” and if a defendant, after having been *539 taken in execution, was seen at large for any the shortest time, the sheriff was chargeable for an escape. Even though the escape was clearly without any default on the part of the officer, such circumstance of itself afforded no justification. Even the rescue of the prisoner from the sheriff by a mob destroying the jail and carrying off' the prisoner by a force so great and violent that the sheriff' could not resist it, although he did all in his power to prevent it, was, in the case of Elliott v. The Duke of Norfolk, 4 T. R. 789, decided by the Court of king’s bench, to be an escape for which the sheriff was liable. The act of God alone or that of the king’s enemies would excuse the sheriff on the general issue. It is true that when the escape was without the assent of the sheriff, and he made fresh pursuit and retook the prisoner before action brought, he was permitted to plead such fact specially. The remedy for an escape, whether negligent or voluntary, was by an action on the case, in which all that it was necessary for the plaintiff' to show in order to maintain his action, was that the prisoner had been legally arrested by a proper execution, and that he was afterwards seen at large. And under a count for a voluntary escape it was competent for the plaintiff to recover on evidence showing a negligent escape.
By the statutes 13 Ed. 1, ch. 11, and 1 Rich. 2, ch. 12, the action of debt for the escape of prisoners out of execution was given. These statutes gave a new and cumulative remedy, but they imposed no new burden of proof on the plaintiff. The same state of facts that before entitled him to recover in the action on the case now entitled him to recover in the action of debt. There was however one important difference between the judgments authorized by the two actions; for, when the action on the case was brought, the jury were at liberty to give such damages as they thought right under all the circumstances of the case; *540 but when the action of debt, the remedy prescribed by the statutes, was resorted to, the sheriff or jailor w7as placed in the same situation in which the original debtor stood, and the jury could not give a less sum than the creditor would have recovered against the prisoner, to wit, the amount of the debt mentioned in the execution and the costs. Selwyn Nisi Prius, Wheaton’s edi. 454, 5, 6, and authorities there cited.
The English laws and decisions on the subject were found by experience, in Virginia, to be too harsh in their operation against the sheriffs; and as early as 1736 an act was passed making an important change in their favor. This act, after reciting that by reason of the situation of most of the county prisons within this colony, some evil disjiosed persons have had opportunities of breaking the same open, and turning out debtors and others, to the hindrance of justice, the injury of creditors, and ruin of sheriffs, who, upon actions brought for escapes, have been compelled to pay the debts for which such prisoners stood charged, proceeds to declare that no judgment shall be entered against any sheriff or other officer in any suit hereafter to be brought, for the escape of any debtor in his or their custody, unless the jury who shall try the issue, shall expressly find that such debtor did escape with the consent, or through the negligence of such sheriff or officer; or that such prisoner might have been retaken, and that the sheriff and his officers neglected to make immediate pursuit. The influence of this statute on the rights of the parties to an action for an escape was the subject of adjudication in the case of Johnson v. Macon, 1 Wash. 5; 4 Call. 370. In that case the Circuit court had instructed the jury that it was necessary for the plaintiff to prove not only the escape of the prisoner, but also to show that it was made by the consent or negligence of the sheriff. Upon an appeal, this court decided that the *541 instruction was wrong; that whilst it was necessary that the jury should find expressly that the debtor did escape with the consent or through the negligence of the officer; or that such prisoner might have been retaken and that the sheriff neglected to make immediate pursuit; still that it was not necessary for the plaintiff to do more than prove the escape which was still the gist of the action; and that the consent or negligence of the sheriff would and ought to be presumed by the jury, unless the sheriff showed that there was no negligence on his part, amd that due means were used to retake the prisonex. The act of 1792, which was re-enacted in 1819 at the same time when the provisions for the summary remedy against the sheriff for an escape by motion were embodied in the section under which the plaintiff proceeded, is made up of the preamble and of the first section of the act of 173G before cited, and of a proviso in the following words: “ Provided always, that when any sheriff shall have taken the body of any debtor in execution, and shall willfully and negligently suffer such debtor to escape, the person suing out such execution, his executors or administrators, may have-an action of debt against such sheriff, his executors and administrators, &c. for the recovery of the sum of money mentioned in the execution, and damages for detaining the same.
If this proviso were read alone without-any reference to the previous laws on' the subject and to the preamble and first part of the section in reference to the requisites of the verdict, it might seem to countenance the idea that it was the purpose of the legislature to give the action of debt only where the escape was both willful and negligent. This'proviso is, however, taken mainly from the 37th section of chap. 1 of the acts of 1753, which gave the action of debt for escape to and against the representatives of the plaintiff and the sheriff, and which declares that when any sheriff shall *542 have taken the body of a debtor in execution, “ and shall willfully or negligently” suffer such debtor to escape, the plaintiff, his executors, &c. may have an action of debt against the sheriff, his executors, &c. Taking the act regulating the action of debt then, as it now stands on the statute book, there can, I think, be no doubt that it was the purpose of the legislature to give the action of debt for an escape in all cases where the escape was willful or negligent; and that in order to maintain his action, it would be only necessary for a plaintiff to show the escape; and that in order to defeat the action, it would be incumbent on the sheriff not only to show that the escape was tortious, but that fresh pursuit was made. That upon the plaintiff’s proving the escape, the jury would be bound to presume all that is necessary under the statute, to be found in their verdict, unless and until the sheriff negatived by his proof all consent or negligence on his part, and also showed that he had used due means to retake the prisoner.
Such being the state of the law with respect to the action for an escape, the legislature thought proper to give the still further remedy by motion. The statute which gives it, provides plainly, I think, for two classes of cases, or states of facts, in either of which the motion may be resorted to : First, when the return states that the officer has taken the body of the debtor and has it ready to satisfy the execution, and the plaintiff can show the escape aliunde; and secondly, when the return shows such a state of facts, as would have entitled the plaintiff to a verdict and judgment in an action of debt for an escape.
As the case stood on the original return, (which was, as I conceive, equivalent to a return that the sheriff had executed the writ on all of the defendants, and had their bodies ready to satisfy the debt in the execution mentioned,) the plaintiff had nothing more to do, *543 in order to sustain his motion, under the first clause of the section heretofore cited, than to exhibit the return, and to prove aliunde that any one of the defendants had been seen at large since the execution of the writ. The court occupying, on the motion, the place, and discharging the functions of a jury, as to all questions of fact, would have been compelled to presume, in obedience to the principles heretofore adverted to, that the escape was with the consent of the sheriff.
In this state of things the defendant asked leave of the court to amend his return. Seeing the danger to which he was exposed, it is but reasonable to suppose that the defendant would, in his amended return, if he could do so consistently with the true state of the facts, set forth in plain and unambiguous terms, all matters of excuse or justification he might have for the escape. The language of the amended return, however, instead of setting forth explicitly the circumstances under which the escape was made, is vague, equivocal and susceptible of either the one or the other of two constructions. It may mean that there being no jail provided by the County court to confine the prisoner in, and not being bound to furnish a place for his confinement, the sheriff had permitted him to escape; or it may mean that there being no jail to confine the prisoner in, he made his escape, notwithstanding the sheriff used such means as were in his power to prevent it. If one of these interpretations can be regarded as more favorable to the sheriff than the other, I know of no rule which would require us, on that account, to adopt it rather than the other; which would make it our duty to infer and imply, from a vague and ambiguous return, made under the circumstances which attended this, a defence which, if it existed, it was no less the duty than the interest of the sheriff to state in a plain, direct and straight forward manner.
*544 The first of these two constructions is, I think, the most reasonable. It approaches nearer the literal meaning of the language employed in the return, and leaves less to inference and implication. And if such be the sense in which the return is to be understood, it show's a plain case of voluntary escape. Precisely such a state of facts, as I construe the return before us as disclosing, were pleaded by the sheriff in the case of Gwinn v. Hubbard, 3 Blackf. R. 14. The substance of the plea in that case being, that tlie county court had neglected and refused to cause a jail to be erected, and that because there was uo jail the sheriff had permitted the prisoner to escape as he lawfully might do. The plea wras held to- be bad. And the court said that by the common law each county bad two prisons : one for the reception of criminals, furnished by the public, and the other for the reception of debtors, furnished by the sheriff. That the sheriff might appropriate his own house for that use, or furnish any other house within the bounds of the county, and that the government would be bound to- indemnify him. That the sheriff was bound to keep all such prisoners in safe custody till the debt was paid or the prisoner otherwise legally discharged; and that to enable him to do so, the whole means and power of the county were at his disposal. That nothing but public enemies or the act of Glod could release him from that obligation. That though by statute the board of the county were required to erect a jail, the time of doing so was left to their discretion, and that no provision had been made for the detention of prisoners until the public prison could be erected. That it could not he presumed that the legislature intended that no debtor should be imprisoned until it might suit the convenience of the county authorities to erect prisons. That as there was no prison in the county provided by the board, the common law governed, and *545 that the sheriff ought to have furnished a prison, and detained the debtor in close custody until the debt was paid or the prisoner otherwise legally discharged.
These views apply with full force to the case before us. By our statute it is made the duty of each county court to cause to be erected and kept in good repair in each county a jail well secured, &c. And it is declared that the court failing in its duty in this regard, shall be liable to the action of the sheriff from time to time, for all damages recovered against him for any escape, for want of a sufficient prison. And in cases where a jail is destroyed by fire or otherwise, provision is made for keeping persons committed for crime, in the jail of some adjoining county, but no provision has been made by statute (so far as I have been able to discover,) for the custody, in such emergencies, of debtors in execution. Tate’s' Digest, 463. In such cases I apprehend the common law must prevail, and the sheriff cannot excuse himself for the. escape of a debtor once taken into his custody under a capias ad satisfaciendum, by returning or showing simply that there was no jail provided by the county court in which to confine the debtor.
But let it be conceded for the sake of the argument, that the second construction, of which I have supposed the return to be susceptible, is the true one; that the return means, that there being no jail to confine the prisoner in, he made his escape without the consent of the sheriff, and despite the use of means employed for his confinement, which the sheriff reasonably supposed adequate to his safe custody. Still, under the authority of the case of Johnson v. Macon, a state, of facts would be shown entitling the plaintiff to recover in his action of debt. To take the return out of the influence of that decision, it is necessary to make a still farther inference in its favor; and to construe it as meaning to aver also that after *546 the escape the sheriff used all the means required by law and within his power to retake the prisoner. Such an inference would, I think, be altogether out of the language of the return, and wholly foreign to any fair and reasonable interpretation. The return does not allege an immediate pursuit of the prisoner; and it does not say that he might not have been retaken. This is as much a matter of defence which the sheriff is bound to show as that the escape was made without any negligence on his part. At common law and under the English statutes, the making of fresh suit would have been of no avail to the sheriff. He could defend himself in a case of negligent escape only by showing a recaption of the prisoner before action brought. The change made in this regard by our statutes goes to the extent of placing proof by the sheriff of immediate pursuit, or of the fact that the prisoner could not be retaken, when the escape is tortious, on the same footing with a recaption in England : But it goes no farther. ■ It is still for the sheriff to make out his defence; and it is only half completed when he shows a tortious escape; the authority of the case before referred to, requiring him also to show that fresh pursuit was made.
Upon the simple exhibition of the amended return, then, the plaintiff would have been entitled to recover in an action of debt, and his case is, I think, plainly within the provisions of the second clause of the section under which the proceeding by motion was had.
This view of the case precludes the necessity, on my part, of deciding any question with respect to the parol evidence offered by the plaintiff, or of adverting to it at all, further than to observe, tliat even upon the concession that the defendant might resort to it for any matter of defence which it discloses, although the plaintiff could not use it to contradict the sheriff’s *547 return, it does not, in my opinion, furnish any such matter. It presents no faet which can make the case of Carthrae v. Clarke, 5 Leigh, 268, bear unfavorably upon the plaintiff’s case. It does not show any waiver whatever by the plaintiff of his right to proceed against the sheriff for an escape.
There was no necessity of a new notice, on the amended return. The only object of such notice would have been to apprise the sheriff of the plaintiff’s demand. This information he had. He had full notice that the object was to hold him liable on motion for the escape as set forth in his own returns.
I think the court erred in refusing to sustain the plaintiff’s motion.
Allen and Lee, Js. concurred in the opinion of Daniel, J.
Samuels, J. concurred with Moncure, J.
Judgment reversed.